UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- x

JAIME PAGAN, ARIEL RUANO, and CHRIS SADOWSKI, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

JACK LU, ZHUOXUN YIN, SIDNEY ZHANG, ZHUOJIE ZHOU, EUCLID LABS, INC. d/b/a MAGIC EDEN, ME FOUNDATION, and DOES 1 THROUGH 50,

Defendants.

---------------------------------------------------------------------- x

Case No. 1:26-cv-3608 (BMC)

ORAL ARGUMENT REQUESTED

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ZHUOXUN YIN'S MOTION TO DISMISS THE COMPLAINT**

BURWICK LAW, PLLC
43 West 43rd Street, Suite 114
New York, NY 10036
(646) 762-1080
*Counsel for Plaintiffs and the Proposed Class*

## TABLE OF CONTENTS


PRELIMINARY STATEMENT .......... 1

STATEMENT OF FACTS .......... 3

A. Yin's Role and His Own Representations .......... 3

B. Yin's New York Conduct .......... 3

C. The Service of Process .......... 4

LEGAL STANDARDS .......... 5

ARGUMENT .......... 6

I. SERVICE WAS PROPER .......... 6

A. Service at One of Yin's Abodes Remains Prima Facie Valid Under Rule 4(e)(2)(B) and RCW 4.28.080(14) .......... 6

B. Service Was Independently Proper Under RCW 4.28.080(15): The Olympia Residence Is One of Yin's Usual Mailing Addresses .......... 8

C. In the Alternative, the Court Should Extend Time and Direct Alternative Service .......... 11

II. THE COURT HAS PERSONAL JURISDICTION OVER YIN .......... 11

A. Yin Is a Primary Actor in Magic Eden's New York Conduct and Was Personally Present for It .......... 11

B. Yin's Authorities Describe Defendants Who Did Nothing, Unlike Him .......... 13

C. Due Process Is Satisfied; Alternatively, Jurisdictional Discovery Is Warranted .......... 14

III. THE COMPLAINT STATES EACH CLAIM AGAINST YIN PERSONALLY .......... 14

A. The GBL Claims: Officers Are Liable for Deceptive Campaigns They Personally Conduct .......... 14

B. Negligent Misrepresentation: Attribution Is Pleaded, and Defendants' Own Waiver Argument Refutes Their "Faceless Stranger" Premise .......... 15

C. Unjust Enrichment: Yin's Enrichment Is Personal and Well-Pleaded .......... 16

IV. THE ADOPTED CLASS-WAIVER AND SUPPLEMENTAL-JURISDICTION ARGUMENTS FAIL .......... 17

A. The Waiver Is an Affirmative Defense Raised for the First Time in a Reply .......... 17

B. Yin Cannot Invoke Euclid's Waiver: the Class Action Survives Regardless .......... 17

C. The Waiver Could Not Be Resolved on This Record in Any Event .......... 19

D. CAFA Jurisdiction Attached at Filing and Survives .......... 19

CONCLUSION .......... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berger v. Jetblue Airways Corp.*, No. 22-CV-7374 (AMD) (TAM), 2024 U.S. Dist. LEXIS 160827 (E.D.N.Y. Sep. 6, 2024) .......... 18, 19

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) .......... 17

*Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010) .......... 12

*Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805 (7th Cir. 2010) .......... 20

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81 (2d Cir. 2013) (per curiam) .......... 6

*F5 Capital v. Pappas*, 856 F.3d 61 (2d Cir. 2017) .......... 20

*Friedl v. City of New York*, 210 F.3d 79 (2d Cir. 2000) .......... 6

*Gale v. Chicago Title Ins. Co.*, 929 F.3d 74 (2d Cir. 2019) .......... 20

*Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006) .......... 17

*Goettemoeller v. Twist*, 161 Wash. App. 103 (2011) .......... 6, 8, 9, 10

*Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562 (2002) .......... 18

*Gross v. New York City Health & Hospitals Corp.*, 122 A.D.2d 793 (2d Dep't 1986) .......... 18

*Hahn v. JetBlue Airways Corp.*, No. 21-CV-6867 (CBA) (LB), 2022 U.S. Dist. LEXIS 255514 (E.D.N.Y. Aug. 19, 2022) .......... 17, 21

*Horton v. Dow Jones & Co.*, 2019 U.S. Dist. LEXIS 31403 (S.D.N.Y. Feb. 27, 2019) .. 19, 20, 21

*In re Aegean Marine Petroleum Network, Inc. Securities Litigation*, 529 F. Supp. 3d 111 (S.D.N.Y. 2021) .......... 13

*In re EHang Holdings Ltd. Securities Litigation*, 646 F. Supp. 3d 443 (S.D.N.Y. 2022) .......... 13

*In re Fyre Festival Litigation*, 399 F. Supp. 3d 203 (S.D.N.Y. 2019) .......... 15

*Jaffe & Asher v. Van Brunt*, 158 F.R.D. 278 (S.D.N.Y. 1994) .......... 7

*Kimmell v. Schaefer*, 89 N.Y.2d 257 (1996) .......... 15

*Knipe v. Skinner*, 999 F.2d 708 (2d Cir. 1993) .......... 17

*Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460 (1988) .......... 2, 11, 12

*Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327 (2012) .......... 12

*Lynch v. City of New York*, 952 F.3d 67 (2d Cir. 2020) .......... 6

*Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173 (2011) .......... 16

*Martin v. Meier*, 111 Wash. 2d 471 (1988) .......... 9

*Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685 (S.D.N.Y. 2015) .......... 14

*Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253 (2d Cir. 1991) .......... 7

*Newman v. GREP Atl., LLC*, No. 25-CV-00178 (JAV), 2026 U.S. Dist. LEXIS 61740 (S.D.N.Y. Mar. 24, 2026) ........ 18, 19, 20, 21

*Old Republic Ins. Co. v. Pacific Fin. Servs. of Am.*, 301 F.3d 54 (2d Cir. 2002) ........ 5, 8

*People v. Apple Health & Sports Clubs, Ltd.*, 80 N.Y.2d 803 (1992) ........ 15

*Pulver v. Dougherty*, 58 A.D.3d 978 (3d Dep't 2009) ........ 18

*Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115 (2d Cir. 2010) ........ 18

*Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18 (2d Cir. 1988) ........ 12

*Ross v. Am. Express Co.*, 547 F.3d 137 (2d Cir. 2008) ........ 18

*Rushaid v. Pictet & Cie*, 28 N.Y.3d 316 (2016) ........ 12

*Saphirstein v. Mauzone Mania LLC*, No. 15-CV-7264 (ERK)(RML), 2017 WL 3278893 (E.D.N.Y. July 31, 2017) ........ 2, 15

*Sheldon v. Fettig*, 129 Wash. 2d 601 (1996) ........ 7

*Suez Equity Invs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87 (2d Cir. 2001) ........ 15

*Walden v. Fiore*, 571 U.S. 277 (2014) ........ 13

*Woodruff v. Spence*, 76 Wash. App. 207 (1994) ........ 6, 8

*Wright v. B & L Props., Inc.*, 113 Wash. App. 450 (2002) ........ 8, 9, 10

*Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95 (2d Cir. 2022) ........ 19

**Statutes**

28 U.S.C. § 1332(d) ........ 20

N.Y. C.P.L.R. 302(a)(1) ........ 12

N.Y. C.P.L.R. 302(a)(2) ........ 12

N.Y. C.P.L.R. 308(5) ........ 21

N.Y. Gen. Bus. Law § 349 ........ 14, 15, 21

RCW 4.28.080(14) ........ 2, 6

RCW 4.28.080(15) ........ 2, 8

**Rules**

Fed. R. Civ. P. 4(e)(1) ........ 6

Fed. R. Civ. P. 4(e)(2)(B) ........ 2, 6

Fed. R. Civ. P. 4(f)(3) ........ 11, 21

Fed. R. Civ. P. 4(l)(3) ........ 11

Fed. R. Civ. P. 4(m) ........ 11, 21

Fed. R. Civ. P. 8(d) ........ 16

Fed. R. Civ. P. 12(b)(2) ........ 6

Fed. R. Civ. P. 12(b)(6) ........ 6, 17
Fed. R. Civ. P. 12(d) ........ 6

**Other Authorities**

*Degen*, Crypto.com, https://crypto.com/us/glossary/degen (last visited Aug. 18, 2026) ........ 1
S.B. Rep. on S.B. 5167, 54th Leg., Reg. Sess. (Wash. 1996) ........ 8

## PRELIMINARY STATEMENT

Zhuoxun Yin is not a bystander to this case. He co-founded Magic Eden, serves as its Chief Operating Officer, and personally carried its promotional campaign into New York: he worked the company's New York events in person, distributed tickets to its April 2024 New York yacht event from his personal X account, told his followers "see u next week in nyc," described the 2024 New York yacht as "even more degen than [he] remember[s]"[1] compared to the 2022 New York yacht, and helped announce the $ME token whose marketing this action concerns. (Compl. ¶¶ 36–38; Dkt. 21-6 at Exs. A-8, A-9, A-22–A-25.) His motion asks the Court to see a different person: an absent foreign executive with no connection to New York, to the challenged statements, or to the plaintiffs "whatsoever." (Dkt. 27 at 2–3.)

On service, the sworn return demonstrates a licensed process server delivered to a woman at the Olympia, Washington residence who identified herself as Yin's "aunt, co-resident" and accepted the papers directly. (Dkt. 24.)

The Postal Service's records corroborate that Yin's usual mailing address has been whichever home his in-laws occupy: first their Duluth, Minnesota home, now their Olympia, Washington home. Yin twice directed USPS to permanently forward his mail to the Olympia residence, once from his in-laws' former Duluth, Minnesota home and once from his last San Francisco apartment, and in the years since he has never redirected his mail, to his undisclosed foreign address or anywhere else. (Affirmation of Rylan Maksoud ("Maksoud Affirm.") Ex. 1.)

[1] "'Degen' is a slang term derived from the word 'degenerate' . . . . In the cryptocurrency space, it is often used to refer to individuals who engage in high-risk and speculative trading or investment strategies." *Degen*, Crypto.com, https://crypto.com/us/glossary/degen (last visited Aug. 18, 2026).

Commercial databases reported the Olympia residence as his current address through the date of the report, July 17, 2026, six days before service. (*Id.*)

Yin plainly has actual notice: Morrison Cohen appeared for him within two days of the proof's filing. Service was valid twice over: under Rule 4(e)(2)(B) and RCW 4.28.080(14), because the Olympia home is a usual abode of his, and independently under RCW 4.28.080(15), because on USPS records and his own admissions it is his usual mailing address.

On jurisdiction and the merits, Yin's motion depends on a doctrine New York abolished. Under *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467-72 (1988), there is no fiduciary shield: an officer who is a primary actor in the New York transaction answers for it personally, and officers who never set foot in New York have been held to answer where their companies' New York activity was conducted for their benefit and under their control. Yin did set foot in New York, repeatedly. On attribution, the Complaint pleads what Yin himself said and did, detailing platform and subject (¶¶ 36–38, 86, 184, 204, 224-25): the particularity *Saphirstein v. Mauzone Mania LLC,* No. 15-CV-7264 (ERK)(RML), 2017 WL 3278893 at *3 (E.D.N.Y. July 31, 2017), found missing when nothing specific was alleged about corporate defendants.

Finally, Yin "adopts and incorporates" Euclid Labs' new class-waiver and supplemental-jurisdiction arguments, raised for the first time in a reply. Those arguments fail for everyone, but they fail for Yin twice over: the waiver he borrows is an agreement between "you and Euclid Labs" about disputes "against the other." Yin is a stranger to it: as his own motion insists, there is "no relationship between Plaintiffs and Yin whatsoever."

Regardless, successful challenges to class certification result in the court retaining original jurisdiction over remaining claims instead of supplemental jurisdiction, and original jurisdiction under CAFA attaches based on the pleadings as filed.

## STATEMENT OF FACTS

### A. Yin's Role and His Own Representations

Yin co-founded Euclid Labs and serves as its Chief Operating Officer. (Compl. ¶ 36.) He "made product announcements, cross-chain strategy updates, and public representations about the $ME ecosystem through his X account and media appearances," and appeared on a widely distributed podcast to announce the $ME token itself. (Compl. ¶¶ 38.) Cross-chain expansion, the representation that $ME would serve as the token of a multi-chain ecosystem, is among the specific use-case representations the Complaint details as materially misleading. (Compl. ¶¶ 74, 97–99, 170.) As a co-founder, Yin stood to benefit personally from the contributor allocations, 25.5% of total token supply, whose value the retail campaign sustained until the June 10, 2026 insider unlock, six days before this action was filed. (¶¶ 155–56, 182, 189)

### B. Yin's New York Conduct

Yin personally participated in Magic Eden's multi-year New York promotional event program. In March 2022, he worked the company's New York event in person, memorialized in Magic Eden's own post of a video of Yin "passing out pizzas" under NYC's iconic scaffolding. (Dkt. 21-6, Exs. A-8, A-9; *see also* Dkt. 21-11, Ex. F)

In the spring of 2024, he personally promoted the company's April 3, 2024 "Degen Yacht Party" in New York Harbor. His personal X account reposted Magic Eden's post, distributed admission codes ("anyone need a ticket to degen yacht party? i got a fresh list of codes"), and posted "see u next week in nyc." (Dkt. 21-6, Exs. A-22–A-25.) The event was a ticketed, branded commercial function with a scheduled 7:30 p.m. "Announcement by Magic Eden" as its

centerpiece. (Dkt. 21-13, Ex. H.) Eight months later, the company launched the token whose promotion is the subject of this action, with Yin personally announcing it. (¶¶ 7, 38.)

**C. The Service of Process**

On July 7, 10, and 13, 2026, a process server first attempted to serve Yin at the last known address of Euclid Labs' San Francisco headquarters at 332 Pine Street, Suite 800; the building was locked, neither Yin nor Euclid Labs appeared on the directory, and property management stated that the "individual & company" are "not at this address." (Maksoud Affirm. Ex. 2.)

On July 17, 2026, Plaintiffs obtained a skip-trace investigation drawing on three commercial databases (CBC Innovis, Accurint, and TLO from TransUnion). (Maksoud Affirm. Ex. 1.) All three list 8539 Bedington Dr SE, Olympia, Washington as Yin's most recently confirmed address, first reported May 2023 and, last confirmed on May 1, 2026, and July 17, 2026, the report date, six days before service. (*Id.*) TLO did not report any vehicles or driver licenses for Yin. (*Id.*)

The investigation also returned Yin's United States Postal Service records. The National Change of Address service reports two permanent, individual mail forwards for Yin, each ending at the Olympia residence: one from his last San Francisco apartment at 708 Long Bridge Street, reported December 2022, and one from 1723 Woodbury Lane in Duluth, Minnesota, reported March 2023. (Maksoud Affirm. Ex. 1.) The Duluth home was his in-laws': City of Duluth permit records listed its owner as Taek Mu Kwon, and property records show that Taek and Lindsay Kwon purchased the Olympia residence in April 2023, the month after the Duluth home changed hands. (Maksoud Affirm. Exs. 1, 4.)

A person files a change of address only for an address at which he receives mail; when Yin's in-laws moved from Duluth to Olympia, Yin filed his own individual forward from their old address to their new one. His mail follows his in-laws. He has never filed a further change of address, to any foreign address or otherwise, although USPS permits international forwarding and instructs anyone "going to move outside the United States" to submit a change-of-address request in person "before you leave the U.S." (Maksoud Affirm. Ex. 3.)

On July 23, 2026, a licensed process server delivered the summons, complaint, and rider to a woman who "identified themselves as the subject's aunt, co-resident," and who "accepted service with direct delivery"; a copy was mailed to the same address. (Dkt. 24.)

Yin's declaration admits he "listed the Olympia Address on one of [his] credit cards and one of [his] bank accounts"; he still receives mail there; and his mother-in-law resides at the Olympia residence.[2] (Dkt. 30 ¶¶ 12, 15) The declaration attaches no document, names no country, and gives no departure date, no foreign address. It does not explain his two USPS forwards to the Olympia residence or his failure to ever file one away from it if he does not consider it to be his mailing address. Morrison Cohen, the same firm representing Euclid Labs, appeared on his behalf on August 13, 2026. (Dkt. 25–26.)

## LEGAL STANDARDS

In New York, a process server's sworn return is prima facie evidence of valid service, which the defendant bears the burden of rebutting with specific facts. *Old Republic Ins. Co. v. Pacific Fin. Servs. of Am.*, 301 F.3d 54, 57-58 (2d Cir. 2002).

---

[2] "Aunt" serves in ordinary English and other languages as a loose honorific which includes older female relatives by marriage, explaining why his mother-in-law would identify herself as his aunt.

Washington law is stricter on a defendant challenging service: "An affidavit of service is presumptively correct, and the challenging party bears the burden of showing improper service by clear and convincing evidence." *Woodruff v. Spence*, 76 Wash. App. 207, 210 (1994); *see also Goettemoeller v. Twist*, 161 Wash. App. 103, 107 (2011).

On a Rule 12(b)(2) motion made before discovery, plaintiffs need only a prima facie showing of jurisdiction, with the pleadings and affidavits construed in their favor and all doubts resolved in their favor. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84–85 (2d Cir. 2013) (per curiam). On a Rule 12(b)(6) motion, the Court accepts the Complaint's allegations as true and draws all reasonable inferences for plaintiffs, *Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020), and may not consider a defendant's extrinsic declarations without converting the motion, *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000); Fed. R. Civ. P. 12(d).

## ARGUMENT

### I. SERVICE WAS PROPER

#### A. Service at One of Yin's Abodes Remains Prima Facie Valid under Rule 4(e)(2)(B) and RCW 4.28.080(14)

Yin's declaration did not rebut with clear and convincing evidence the prima facie validity of the proof of service. Rule 4(e)(2)(B) authorizes service by leaving process "at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." RCW 4.28.080(14) allows for service "by leaving a copy of the summons at the house of his or her usual abode with some person of suitable age and discretion then resident therein." Rule 4(e)(1) makes state law "where service is made" an independent method of service.

A person "can have two or more 'dwelling houses or usual places of abode,'" each valid for service so long as it bears "sufficient indicia of permanence." *Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 257 (2d Cir. 1991).

Washington law is in accord: its statute is "liberally construed," and under *Sheldon v. Fettig*, 129 Wash. 2d 601, 609, 611 (1996), a defendant may have "more than one house of usual abode."

"Our highly mobile and affluent society has relegated to history the days when an individual had but a single residence." *Jaffe & Asher v. Van Brunt*, 158 F.R.D. 278, 280 (S.D.N.Y. 1994). A relative's home qualifies where the defendant is received there as family: in *Jaffe,* service on a California resident at his parents' New York home was sustained where he stayed there when in the area and received mail there. *Id.*

The server's contemporaneous, sworn notes record that the woman who answered the door "identified themselves as the subject's aunt, co-resident," and "accepted service with direct delivery." (Dkt. 24.) That on-scene statement, made before any motion strategy existed, is prima facie evidence that the Olympia residence is a household in which Yin's family receives him and his legal papers.

Against his relative's statement, Yin offers his own declaration. (Dkt. 30.) He supplies no lease, no license, no postal record, no foreign address, and no departure date. His denials leave much unsaid: he denies having kept a bedroom, belongings, or a key at the Olympia residence (id. ¶ 8), but never says when he was last at the residence, how often his family receives him there, or whether the 3-bed property contains a guest room he has used. He also does not address whether he kept a bedroom, belongings, or key at his in-laws' Duluth, Minnesota address from which he individually forwarded his mail to the Olympia residence.

A defendant's bare denial does not automatically rebut the presumption of proper service; specific facts rebutting the process server's statements are required. *Old Republic*, 301 F.3d at 58; see also *Woodruff*, 76 Wash. App. at 210 ("challenging party bears the burden of showing improper service by clear and convincing evidence"). An unsupported declaration from a defendant with obvious actual notice, whose own postal filings point to him moving to the address he disclaims, does not carry that burden.

**B. Service Was Independently Proper Under RCW 4.28.080(15): The Olympia Residence Is One of Yin's Usual Mailing Addresses**

Yin was served at (one of) his usual mailing address(es). Where, as here, the defendant "cannot with reasonable diligence be served" personally or at an abode, Washington law permits service "[b]y leaving a copy at his or her usual mailing address with a person of suitable age and discretion who is a resident, proprietor, or agent thereof, and by thereafter mailing a copy by first-class mail, postage prepaid, to the person to be served at his or her usual mailing address." RCW 4.28.080(15).

A person "may have more than one 'usual mailing address,'" and the touchstone is "some level of actual use for the receipt of mail or arrangements contemplating an actual use for receiving and forwarding mail." *Goettemoeller v. Twist*, 161 Wash. App. 103, 109 (2011).

The Legislature enacted the provision so that a person could not "avoid service of process" by running his affairs through a mail-drop address while keeping himself out of reach, *Wright v. B & L Props., Inc.*, 113 Wash. App. 450, 462 (2002) (quoting S.B. Rep. on S.B. 5167, 54th Leg., Reg. Sess., at 2 (Wash. 1996)).

Washington courts enforce it on facts similar to this case: in *Wright*, the Plaintiffs had just one address for the defendant, a private mailbox at a mini storage facility. *Id.* at 454-55. Their investigation returned only that address. *Id.* at 455. Meanwhile, the defendant was living in the Caribbean but "did not submit a change of address form to the United States post office." *Id.* at 456. Instead, he had the mini-storage facility forward his mail to him. *Id*. The court sustained service at the mini storage facility where he kept his mailbox. *Id.* at 464. Each element is satisfied here.

First, reasonable diligence. The standard asks for "honest and reasonable efforts to locate the defendant," not "all conceivable means." *Wright*, 113 Wash. App. at 458; accord *Martin v. Meier*, 111 Wash. 2d 471, 482 (1988).

Plaintiffs attempted service three times at Yin's last known business address, where property management reported that both the company and the individual were gone (Maksoud Affirm. Ex. 2), then ran skip-trace searches through multiple commercial databases, which returned no more recently confirmed United States address than the Olympia residence (Maksoud Affirm. Ex. 1). The *Wright* plaintiffs satisfied the standard with less: directory assistance, two agency inquiries, and record searches. *Wright,* 113 Wash. App. at 455. Yin's declaration removes any doubt on diligence: he swears he resides outside the United States at a home he will not identify. (Dkt. 30 ¶¶ 16–17, 19.) A defendant who cannot be served personally or at an abode anywhere in this country, at any address he is willing to name, is precisely the defendant who "cannot with reasonable diligence be served" under subsection (14).

Second, the Olympia residence is Yin's usual mailing address, or one of his usual mailing addresses with "some level of actual use for the receipt of mail or arrangements contemplating an actual use for receiving and forwarding mail." *Goettemoeller*, 161 Wash. App. at 109. Yin's actual

use is a matter of federal postal record: he filed two permanent, individual change-of-address orders ending at the Olympia residence, one from his last San Francisco apartment and one from his in-laws' former Duluth home, and in the years since he has filed none away from it, although USPS instructs anyone moving abroad to file a forward in person "before you leave the U.S." (Maksoud Affirm. Exs. 1, 3.) Yin's usual mailing address, in short, is wherever his in-laws live, from Duluth to Olympia. He clearly receives the mail he causes to be sent to their address.

Yin's own declaration confirms: he "listed the Olympia Address" with his bank and his credit card when he moved abroad, and he receives mail there to this day. (Dkt. 30 ¶ 15.) His characterization of the mail he receives there as infrequent "administrative or unwanted marketing mail" (Dkt. 30 ¶ 15) cannot be squared with his own filings: no one submits two permanent USPS change-of-address orders to chase junk mail.

Yin's remaining objections fail on the cases he would need. He "consider[s]" his undisclosed foreign home his usual mailing address (Dkt. 30 ¶ 17), but the statute does not turn on the defendant's preference, and a defendant may maintain more than one usual mailing address. *Goettemoeller*, 161 Wash. App. at 109.

Under subsection (15) the recipient need only be "a resident, proprietor, or agent" of the mailing address, which his mother-in-law indisputably is, and "whether [Yin] lived at the address used under the substitute service statute and whether the [recipient] was a resident authorized to accept service of process are of no consequence." *Wright*, 113 Wash. App. at 458.

And his point that the AO 440 return recites the federal abode formula rather than the words "usual mailing address" (Dkt. 30 ¶ 14) mistakes the form for the act: the server left the papers with a resident of Yin's usual mailing address and mailed a copy to it (Dkt. 24), which is what the

statute requires. "Failure to prove service does not affect the validity of service. The court may permit proof of service to be amended." Fed. R. Civ. P. 4(l)(3).

### C. **In the Alternative, the Court Should Extend Time and Direct Alternative Service**

If the Court does not believe the proof of service may be amended, the efficient course is: deny dismissal, extend time under Rule 4(m), and, given Yin's undisclosed departure from the country, direct alternative service under Rule 4(f)(3) upon Morrison Cohen, which already represents him.

Court-directed alternative service is routine where a defendant's whereabouts are obscured. Yin has actual notice, sophisticated counsel, and no articulable prejudice; a defendant who leaves the country without disclosure, then calls the family doorstep he lists as his address, where his mother-in-law accepted his legal papers, "a bogus address," is not the party the service rules protect. Plaintiffs also ask, if Yin presses his factual assertions, for targeted discovery into his residence, his departure date, and the Olympia household.

## II. THE COURT HAS PERSONAL JURISDICTION OVER YIN

Yin incorporates Euclid Labs' motion to dismiss at Dkt. 19, and Plaintiffs incorporate their opposition at Dkt. 21. (*See* Dkt. 27 at 2 n. 1)

### A. Yin Is a Primary Actor in Magic Eden's New York Conduct and Was Personally Present for It

New York rejected the fiduciary shield doctrine nearly four decades ago: an individual is not insulated from long-arm jurisdiction because his New York conduct was undertaken in a corporate capacity. *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467–72 (1988). Under *Kreutter*, an out-of-state officer answers in New York where the corporation's New York activity

was conducted "for the benefit of and with the knowledge and consent of" the officer, who "exercised some control" over it, the "primary actor" standard, even where, like the officer in *Kreutter* itself, he never entered the state. *Id.* at 467, 470.

Applying *Kreutter*, the Second Circuit sustained jurisdiction over a CEO and CFO whose misrepresentations were made from California and reached New York through franchise sales and marketing, *Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 20, 22 (2d Cir. 1988), and over an individual principal of an Alabama boutique on the strength of a single New York shipment plus the business's New York-directed activity imputed to him, *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164–66 (2d Cir. 2010).

Yin's New York record exceeds each of those defendants'. He did not direct New York activity from afar: he performed it. He worked the March 2022 New York event in person, even "passing out pizzas" on video (Dkt. 21-6, Exs. A-8, A-9); personally solicited attendance at the company's April 2024 New York yacht event by distributing admission codes from his personal account (Dkt. 21-6, Exs. A-22, A-23); announced "see u next week in nyc"; (Dkt. 21-6, Exs. A-24) and thereafter served as one of the token's public announcers (Compl. ¶ 38). The company's New York events program (Dkt. 21-6, Exs. A, D–H) was conducted with his knowledge and consent, in part by his own hands, and for his benefit as a co-founder holding contributor allocations whose value the consumer campaign sustained (¶¶ 155–56, 182).

Under CPLR 302(a)(1) this is transacting business; under CPLR 302(a)(2), his in-state promotional appearances are acts committed within the state; and the claims' relatedness to this course of New York solicitation is governed by the "relatively permissive" nexus standard that "does not require causation." *Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 329 (2016) (quoting *Licci*

*v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339 (2012)). Plaintiffs incorporate their relatedness showing from the Euclid opposition (Dkt. 21 § I.B).

**B. Yin's Authorities Describe Defendants Who Did Nothing, Unlike Him**

*Walden v. Fiore* condemns jurisdiction premised on the plaintiff's forum connections: the Georgia officer there "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Walden v. Fiore,* 571 U.S. 277, 289 (2014). The same opinion reaffirms that "physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Id.* at 285. Yin did everything Walden's officer did not: he traveled to New York, personally conducted the promotional activities at issue in New York, and sent admission codes into New York for a New York event. His contacts are defendant-created in the most literal sense.

*In re Aegean Marine Petroleum Network, Inc. Securities Litigation* states the rule Yin invokes, jurisdiction must be established "separately over each defendant," 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021). The court dismissed Greek outside directors whose only pleaded contacts were board seats and signatures on filings not alleged to be false. *Id.* at 140–44.

*In re EHang Holdings Ltd. Securities Litigation* does not help Yin. It found no jurisdiction over an outside director whose "posts and Tweets were not statements that Plaintiffs challenged as materially false or misleading" and who had no "role in making or preparing the statements alleged to be false or misleading." *In re EHang Holdings Ltd. Securities Litigation,* 646 F. Supp. 3d 443, 458 (S.D.N.Y. 2022).

Yin's own posts, own ticket distributions, own New York appearances, and own token announcement provide jurisdiction. (Compl. ¶¶ 36–38; Exs. A-8, A-9, A-22–A-25.) Yin's posts

and podcast appearance are among the challenged promotional representations (¶¶ 38, 204), and he backed the digital campaign with physical presence.

### C. Due Process Is Satisfied; Alternatively, Jurisdictional Discovery Is Warranted

An officer who regularly traveled to the forum to stage his company's promotional events, personally solicited forum residents to attend them, and holds a direct economic stake in the campaign those events served has purposefully availed himself of the forum in the most conventional sense, and the exercise of jurisdiction over him is reasonable.

Should the Court require more, Plaintiffs request targeted jurisdictional discovery: Yin's travel records for the New York events; his role in the campaign's content and event program; and the invitation and attendee data for the April 2024 event.

## III. THE COMPLAINT STATES EACH CLAIM AGAINST YIN PERSONALLY

Yin incorporates Euclid Labs' motion to dismiss at Dkt. 19, and Plaintiffs incorporate their opposition at Dkt. 21. (*See* Dkt. 27 at 3)

### A. The GBL Claims: Officers Are Liable for Deceptive Campaigns They Personally Conduct

GBL § 349 reaches "any person" who engages in deceptive acts, and New York holds corporate officers individually liable where they participated in or had knowledge of the deceptive conduct. *See Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 701 (S.D.N.Y. 2015) ("Plaintiffs are not holding individual defendants liable by virtue of their employment; rather, their individual liability arises from their own conduct that violates the GBL."); *see also People v. Apple Health & Sports Clubs, Ltd.*, 80 N.Y.2d 803, 807 (1992).

The Complaint pleads Yin's participation with specificity: he announced the token; he personally made cross-chain and ecosystem representations; cross-chain expansion is among the charted misrepresentation categories; and he personally staged and promoted the New York events through which the campaign built its market. (Compl. ¶¶ 36–38, 86, 170, 184, 204, 224-25)

Yin's authorities are inapposite. In *Saphirstein v. Mauzone Mania LLC*, 2017 WL 3278893, at *3 (E.D.N.Y. July 31, 2017), the complaint alleged only an undifferentiated assertion that four companies "manufacture, distribute, market and/or sell" the product, no individualized conduct at all; and even there, dismissal was with leave to replead.

**B. Negligent Misrepresentation: Attribution Is Pleaded, and Defendants' Own Waiver Argument Refutes Their "Faceless Stranger" Premise**

Attribution is pleaded as described above. *Fyre Festival* itself found an "April 27 Tweet" actionable and attributable to an individual defendant, dismissing that claim only due to failure to allege reliance. *In re Fyre Festival Litigation*, 399 F. Supp. 3d 203, 219 (S.D.N.Y. 2019).

On the special-relationship element, the inquiry into unique expertise, a relationship of trust or confidence, and awareness of the use to which the information would be put, "generally raises an issue of fact" not resolvable on the pleadings. *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (1996); *accord Suez Equity Invs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001).

Pagan was not an anonymous member of the crowd: Magic Eden tracked and ranked him, selected him from its own user data for an invitation-only event, and serviced his four-year staking commitment continuously. (Compl. ¶ 23; Dkt. 21-1 ¶¶ 4, 7, 20, 21, 23.)

Defendants' own filings have now foreclosed the "faceless" characterization. In the same reply that describes Plaintiffs as "the type of 'faceless' recipients that are not in a special

relationship" with defendants (Dkt. 28 at 10), Euclid asks this Court to enforce (at the pleading stage) an alleged contract between itself and Mr. Pagan, and Yin adopts that argument wholesale (Dkt. 27 at 3).

Plaintiffs dispute that any waiver-bearing version of those Terms of Service was validly formed as to Mr. Pagan, *see* infra Part IV, and Rule 8(d) permits the parties' positions to be tested in the alternative. But defendants cannot have it both ways: a plaintiff cannot be a known, registered, continuously serviced contractual counterparty for purposes of extinguishing the class, and a faceless stranger for purposes of denying a duty of care. If Euclid's account of the relationship is true, it concedes precisely the direct and continuing relationship its framing denies. As for Yin, his brief resolves the inconsistency against himself in a single sentence: "there is no relationship between Plaintiffs and Yin whatsoever." (Dkt. 27 at 3.)

**C. Unjust Enrichment: Yin's Enrichment Is Personal and Well-Pleaded**

Unjust enrichment requires no direct dealing between the parties; it requires enrichment at plaintiffs' expense through a not too attenuated relationship "that could have caused reliance or inducement." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011).

Yin's asserted defect, "no relationship between Plaintiffs and Yin whatsoever," misdescribes the pleading. The Complaint alleges that the class's purchases and staking supplied the market liquidity and price support that gave the insider allocations their value; that Yin, as co-founder, held such an allocation within the 25.5% contributor supply; and that the campaign sustained that value through the June 10, 2026 unlock, six days before this action was filed. (¶¶ 155–56, 182, 189.) The benefit is his personally, its source is the class's money, and the connecting relationship is the promotional campaign he helped conduct, including in person, in New York.

## IV. THE ADOPTED CLASS-WAIVER AND SUPPLEMENTAL-JURISDICTION ARGUMENTS FAIL

### A. The Waiver Is an Affirmative Defense Raised for the First Time in a Reply

A contractual waiver is an affirmative defense, resolvable on a Rule 12(b)(6) motion only where it appears on the face of the complaint.

*Hahn v. JetBlue Airways Corp.* enforced a class waiver at the pleading stage only because the plaintiff there sued for the single count of breach of the very contract containing it, which his complaint quoted, making the contract integral. *Hahn v. JetBlue Airways Corp.,* No. 21-CV-6867 (CBA) (LB), 2022 U.S. Dist. LEXIS 255514, at *12-14 (E.D.N.Y. Aug. 19, 2022).

Nothing of the kind is true here: Plaintiffs sue for deceptive marketing of a token purchased on third-party exchanges; the Complaint neither quotes nor relies on the Terms of Service, which enter the record only through a declaration attached to a reply brief.

A document is "integral" only where the complaint "relies heavily upon its terms and effect," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), and the incorporation doctrine does not allow importing a defendant's evidence, *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156–57 (2d Cir. 2006).

Arguments raised for the first time in reply are not properly considered, *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993).

### B. Yin Cannot Invoke Euclid's Waiver: the Class Action Survives Regardless

The waiver defendants quote is expressly bilateral: "YOU AND EUCLID LABS AGREE THAT EACH MAY BRING DISPUTES AGAINST THE OTHER ONLY IN YOUR OR ITS

INDIVIDUAL CAPACITY . . . .” (Dkt. 28 at 6–7.) Unambiguous agreements are enforced according to their plain terms. *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002).

Drafters who intend to extend such provisions beyond the contracting entity know how to say so. The JetBlue contract in *Berger* covered suits against the “Carrier or any of its affiliated entities, agents, directors, employees, and/or officers.” *Berger v. Jetblue Airways Corp.*, No. 22-CV-7374 (AMD) (TAM), 2024 U.S. Dist. LEXIS 160827, at *8 (E.D.N.Y. Sep. 6, 2024). The waiver enforced in *Newman* expressly covered “us or our agents.” *Newman v. GREP Atl., LLC*, No. 25-CV-00178 (JAV), 2026 U.S. Dist. LEXIS 61740, at *3 (S.D.N.Y. Mar. 24, 2026).

Euclid’s clause names Euclid and the user. Yin is neither, and his own brief disclaims any relationship with Plaintiffs “whatsoever.”

Non-signatory enforcement by equitable estoppel is, under New York law, an “‘extraordinary remedy’ to be ‘invoked sparingly and only under exceptional circumstances.” *Berger,* 2024 U.S. Dist. LEXIS 160827, at *13 n.8 (quoting *Pulver v. Dougherty*, 58 A.D.3d 978, 979 (3d Dep't 2009); *Gross v. New York City Health & Hospitals Corp.*, 122 A.D.2d 793, 794 (2d Dep't 1986)).

It is unavailable where the claims do not depend on the agreement and no contractual relationship connects the plaintiff to the non-signatory. *See Ross v. Am. Express Co.*, 547 F.3d 137, 143–48 (2d Cir. 2008). The arbitration analogue requires claims intertwined with the contract plus a relationship the plaintiff understood at contracting. *See Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127-28 (2d Cir. 2010).

The claims against Yin are statutory and tort claims for his own conduct; they owe nothing to the Terms. The consequence is that whatever becomes of Euclid's waiver defense, the class claims against Yin persist, and this case remains the class action Plaintiffs filed.

**C. The Waiver Could Not Be Resolved on This Record in Any Event**

Even against Euclid, and even on a proper motion, the defense founders on formation, version, and scope, each a factual question.

In *Berger*, Judge Donnelly denied the same defense from the same posture, a class waiver asserted at the pleading stage against plaintiffs who had not sued on the contract. *Berger v. Jetblue Airways Corp.*, No. 22-CV-7374 (AMD) (TAM), 2024 U.S. Dist. LEXIS 160827, at *11 (E.D.N.Y. Sep. 6, 2024). The contracts were "relevant only to the defendants' affirmative defense. Accordingly, they cannot be incorporated by reference." *Id.* at *12. "Separately, the Court cannot rely on the undated screenshots of the defendants' websites" to determine notice or assent. *Id.* (citing *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 102–04 (2d Cir. 2022)).

The Xu declaration does not establish which version of the Terms Pagan allegedly accepted, whether that version contained the class waiver, or anything at all about what Mr. Pagan saw or did, crucial elements to form a contract. Additionally, scope is disputed. The waiver governs "Disputes" between the user and Euclid Labs concerning its Services; Plaintiffs' claims concern the marketing of a token acquired on third-party exchanges. Construction of an adhesion contract's ambiguities runs against the drafter. These questions are for a developed record after discovery, not resolvable from undated screenshots submitted in a reply declaration.

**D. CAFA Jurisdiction Attached at Filing and Survives**

The request to "decline supplemental jurisdiction" misconceives the Court's jurisdiction. This action was filed under CAFA, 28 U.S.C. § 1332(d), which grants original jurisdiction over "any civil action *filed* under rule 23" of the FRCP, meeting minimal requirements (emphasis added). Circuits "have uniformly held that "federal jurisdiction under [CAFA] does not depend on certification." *F5 Capital v. Pappas*, 856 F.3d 61, 75–78 (2d Cir. 2017) (quoting *Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 806 (7th Cir. 2010)).

Post-filing events, other than a plaintiff's amendment deleting class allegations, do not divest CAFA jurisdiction. *Gale v. Chicago Title Ins. Co.*, 929 F.3d 74, 77–78 (2d Cir. 2019).

*Newman* first *struck* the class allegations from the complaint, akin to an amendment deleting class allegations like in *Gale*. *See De Newman v. GREP Atl., LLC*, No. 25-CV-00178 (JAV), 2026 U.S. Dist. LEXIS 61740, at *20 (S.D.N.Y. Mar. 24, 2026). That New York tenant's suit against his New York landlord concerned a lease with the class-action waiver, integral to the complaint like *Hahn v. JetBlue Airways Corp*. *See id.* at *2. And the court there expressly held that it "retains subject matter jurisdiction ... notwithstanding the failure of the CAFA claim," while relying on a terse footnote to dismiss based on supplemental jurisdiction. *Id.* at *20-21.

*Horton* involved a Michigan plaintiff who expressly asked the Court *not* to exercise jurisdiction over his Michigan statutory claim if it barred him from proceeding as a class. *Horton v. Dow Jones & Co.,* 2019 U.S. Dist. LEXIS 31403, at *8 (S.D.N.Y. Feb. 27, 2019). The Court then contradicted itself on whether jurisdiction was original or supplemental:

> The Court does have -- and retains despite the dismissal of the class claim -- original subject matter jurisdiction over this action under CAFA, 28 U.S.C. 1332(d). "[T]he fact that the court subsequently determine[s] that the case [cannot] . . . proceed as a class action under CAFA d[oes] not deprive it of subject matter jurisdiction." *F5 Capital v. Pappas*, 856 F.3d 61, 77 (2d Cir. 2017), cert. denied, 138 S. Ct. 473, 199 L. Ed. 2d 358 (2017). The Court thus has supplemental jurisdiction over the individual state law claim. *See* 28 U.S.C.

> 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy under Article III."); *F5 Capital*, 856 F.3d at 77-78.
>
> *Id.* at *9.

Here, Pagan's individual claims are not "supplemental" to anything: they entered under the Court's original jurisdiction. The claims are New York GBL claims in the district that adjudicates them daily; minimal diversity persists between Pagan and every defendant; a full round of motion practice is already invested; and the class claims against Yin survive in all events, *see* supra Part IV.B. There is no basis to decline jurisdiction.

## **CONCLUSION**

The motion should be denied in its entirety. In the alternative, the Court should (i) extend Plaintiffs' time to serve under Rule 4(m) and direct alternative service upon Yin's counsel and by electronic means under Rule 4(f)(3); (ii) grant jurisdictional discovery as to Yin's residence, travel, and role in the promotional campaign; (iii) defer any consideration of the class-waiver defense to a properly noticed motion on a developed record; and (iv) grant leave to amend as to any claim the Court finds insufficiently pleaded.

Respectfully submitted,

BURWICK LAW, PLLC

By: /s/*Rylan Maksoud*
Max Burwick
Rylan Maksoud
43 West 43rd Street, Suite 114
New York, NY 10036
Tel: (646) 762-1080
max@burwick.law
rylan.maksoud@burwick.law

*Counsel for Plaintiffs and the Proposed Class*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c) and Section III.C.1 of the Court's Individual Practices, the undersigned certifies that this memorandum of law complies with the applicable word-count limitation because it contains 6,126 words, including footnotes and excluding the caption, table of contents, table of authorities, signature block, and this certificate. The undersigned relied on the word count of the word-processing software used to prepare this memorandum.

/s/ Rylan Maksoud
Rylan Maksoud