UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JAIME PAGAN, *individually and on behalf of all others similarly situated*,

Plaintiff,

v.

EUCLID LABS, INC., *d/b/a Magic Eden, ME*, ME FOUNDATION, ZHUOXUN YIN, TAN LU, *a/k/a Jack Lu*, SIDA ZHANG, *a/k/a Sidney Zhang*, and ZHUOJIE ZHOU, *et al.*,

Defendants.

**MEMORANDUM DECISION AND ORDER**

26-cv-3608 (BMC)

**COGAN**, District Judge.

After investing about $2,000 in a digital token, plaintiff lost everything. Invoking the Class Action Fairness Act ("CAFA") to get into federal court, plaintiff brought New York statutory and common law claims on behalf of a putative class. Of the six named defendants, two have appeared and moved to dismiss the claims against them. Defendant Euclid Labs, Inc. ("Euclid") moved to dismiss the claims against it because plaintiff signed a class action waiver, thereby divesting the Court's CAFA jurisdiction. Defendant Zhuoxun Yin ("Yin") moved to dismiss the claims against him for lack of personal jurisdiction. For the reasons below, both motions are granted.

## BACKGROUND

### I. Summary of Complaint

Euclid operates Magic Eden, a multi-blockchain "ecosystem" where users buy and sell digital assets. About two years ago, Euclid launched its own digital token, $ME, and promoted it as Magic Eden's official token. Euclid promoted the token's represented uses: cross-blockchain

functionality, ecosystem governance rights, benefits such as token buybacks or "airdrops" of free tokens, and rewards for "staking," *i.e.*, locking up the tokens for a set time period during which tokens cannot be sold. Because token holders received no equity or contractual rights (as the case may be when buying stock of a public company), the token's market value depended on whether those represented uses would generate real demand.

Some of the represented uses did manifest, at least in some capacity. Magic Eden expanded to another blockchain, announced a buyback rollout for three blockchains, and committed 15% of platform revenue to the $ME ecosystem. However, behind this public façade of expansion, Euclid was privately planning and actively considering a "pivot" that would undermine the revenue base supporting many of these representations.

About three months after announcing the buyback, and about one month after the revenue commitment, defendant Lu, Euclid's CEO, announced the pivot: Euclid was prioritizing a new project, Dicey, a crypto casino and sportsbook. As part of the pivot, Euclid would refocus $ME on one blockchain (Solana), shut down its use on other blockchains (Bitcoin and EVM), and discontinue NFT buybacks. Euclid also shut down its proprietary digital wallet, which was a critical element of the ecosystem and token rewards system. At the time of this blitz of information, many token holders, including plaintiff, were "staking" their $ME tokens and thus, despite seeing the writing on the wall, could not sell their $ME tokens. As a result of the pivot, $ME's value quickly declined approximately 98%, from $5.63 to $0.12.

## II. Procedural History

This case was brought by three plaintiffs against six named defendants and 50 John Doe defendants. The complaint brings claims for deceptive business practices and false advertising under N.Y. GBL §§ 349 and 350, and common law claims for negligent misrepresentation and unjust enrichment. As noted, the complaint invokes CAFA as the basis for federal jurisdiction.

Two of the three plaintiffs have no connection whatsoever with New York, despite the causes of action arising exclusively under New York statutory and common law. Pursuant to the parties' consent, the Court dismissed those plaintiffs' claims without prejudice. Of the moving defendants, only Euclid was served with process; Yin waived service while preserving his right to contest personal jurisdiction.[1]

## DISCUSSION

Euclid and Yin collectively moved to dismiss the complaint on the following grounds: (1) lack of subject matter jurisdiction under Rule 12(b)(1); (2) lack of personal jurisdiction under Rule 12(b)(2); and (3) failure to state a claim under Rule 12(b)(6). As discussed below, the Court lacks subject matter jurisdiction for plaintiff's claims against Euclid, and lacks personal jurisdiction for plaintiff's claims against Yin. The Court therefore does not reach the parties' Rule 12(b)(6) arguments.

## I. Euclid

### A. 12(b)(1) Standard

"A [case] is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotations marks and citation omitted). "CAFA gives federal courts jurisdiction over certain class actions," Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 84-85 (2014) (citing 28 U.S.C. § 1332(d)), but if "the jurisdictional allegations are frivolous or defective from the outset, then jurisdiction never existed in the first place, regardless of the plaintiff's invocation of a class action under CAFA," Fleisher v. Phoenix Life Ins. Co., 997 F. Supp. 2d 230, 239 (S.D.N.Y. 2014).

[1] The other named defendants also waived service of process but have not otherwise appeared in this action.

**B. Analysis**

It is undisputed that plaintiff agreed to the terms and conditions of Euclid's digital wallet, which contained a class action waiver that, broadly speaking, applies to claims relating to the wallet. Thus, it seems highly likely, if not totally clear, that plaintiff's class claims (and thus his invocation of CAFA jurisdiction) were "defective from the outset." Id. Nonetheless, plaintiff contends that his claims may proceed because "original jurisdiction under CAFA attaches based on the pleadings as filed." Plaintiff relies heavily on F5 Capital v. Pappas, 856 F.3d 61 (2d Cir. 2017), in which the Second Circuit observed that "the later failure of [a] class claim did not divest the district court of subject matter jurisdiction [under] CAFA." Plaintiff's essential theory is that even if the waiver applies to his class claims, CAFA jurisdiction anchored at the time he filed the complaint because the complaint made no mention of the waiver.

First, that makes no sense. A plaintiff cannot conjure federal jurisdiction based solely on facts strategically asserted in (or omitted from) his complaint, notwithstanding reality at the time of filing. See Conolly v. Taylor, 27 U.S. 556, 565 (1829) ("[J]urisdiction depending on the condition of the party is governed by that condition, as it was at the commencement of the suit."); Anderson v. Watt, 138 U.S. 694, 698 (1891) (dismissing for lack of federal jurisdiction over five years post-filing after discovering plaintiffs' false assertion of diversity jurisdiction).

Second, and more to the point, the Second Circuit has rejected that precise argument. See Gale v. Chi. Title Ins. Co., 929 F.3d 74, 78 (2d Cir. 2019) ("[R]emoving all class-action allegations in the [amended complaint] divested the [court's] CAFA jurisdiction."); Royal Canin U.S.A., Inc. v. Wullschleger, 604 U.S. 22, 30 (2025) ("[A] federal court's jurisdiction depends on what the new complaint says."). Thus, to the extent the class action waiver applies to plaintiff's claims, it divests the Court of subject matter jurisdiction over them.

To that end, there are three issues. The first issue is whether the Court can consider the contract containing the waiver, a document outside of the complaint. If so, the second issue is the waiver's scope, *i.e.*, whether the waiver applies to plaintiff's claims generally. If so, the third issue is the waiver's reach, *i.e.*, whether it reaches plaintiff's claims against Euclid, Yin, or both.

The waiver, in full, states:

> **YOU AND EUCLID LABS AGREE THAT EACH MAY BRING DISPUTES AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, CONSOLIDATED, OR REPRESENTATIVE PROCEEDING.**

i. Consideration of Waiver

"[D]ocuments outside the complaint are generally off-limits on a motion to dismiss." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016). The relevant exception to this rule is for "documents [that are] integral to the complaint." Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 305 (2d Cir. 2021).

"[A] document is 'integral to the complaint' only if the plaintiff himself 'relied on the terms and effect of the document in drafting the complaint'" Id. (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (alterations adopted)). Usually,

> the [document] is a contract . . . containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason – usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim – was not attached to the complaint.

Glob. Network Communs., Inc. v. City of N.Y., 458 F.3d 150, 157 (2d Cir. 2006) ("The exception thus prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting."). A website's terms-and-conditions contract is integral to a "complaint [which] alleges injuries on the basis of [events] made possible only via [agreeing to]

the contract[.]" Nicosia v. Amazon.com, Inc., 834 F.3d 220, 234 (2d Cir. 2016) (complaint alleging injury from Amazon delivery incorporated order confirmation's "Conditions of Use").

Here, the contract containing the class-action waiver relates to Euclid's crypto wallet, which plaintiff admits he "used . . . until [Euclid] shut it down." Thus, the operative question is whether the complaint alleges injuries made possible only by plaintiff (or a putative class member) having used the wallet, and thereby having agreed to its terms. The answer is yes.

Among his many references to it in the complaint, plaintiff connects the wallet directly to the alleged harm:

> The wallet shutdown forced users into an urgent migration process that put unsophisticated users at risk of losing funds. The wallet that users were required to adopt to claim their airdrop was being terminated within approximately seventeen months, with no alternative path provided within the Magic Eden ecosystem.

Indeed, plaintiff dedicates no fewer than eleven paragraphs, in a subsection titled "The Airdrop and Wallet Gateway," to expanding on that harm, including describing Euclid's representations about the "wallet [as] critical . . . because the wallet was the gateway through which consumers accessed $ME."

The wallet is clearly a centerpiece of the complaint, and plaintiff alleges harm that could not have occurred but for a user having assented to the terms of the wallet's use. See Nicosia, 834 F.3d at 234. Accordingly, the contract governing the wallet's use, including the class-action waiver, is integral to the complaint, and may therefore be considered.

ii. Scope of Waiver

The next issue is whether plaintiff's New York and common law claims, in the abstract, fall within the ambit of the waiver. Plaintiff waived his right to bring "Disputes" as a class action, and the contract defines "Disputes" as "any dispute, claim or controversy arising out of or

relating to [1] these Terms or the breach, termination, enforcement, interpretation or validity thereof or [2] the use of the Services (collectively, 'Disputes')." The contract's definition of "Services" is likewise a collective grouping of other pre-defined terms, including definitions for

> the website and interface located at https://magiceden.us (the "**Site**" or the "**Magic Eden Platform**"), the blockchain currency management software that is downloadable from the site (the "**Software**"), corresponding mobile applications ("**Apps**"), and other services and resources that are available, enabled or offered by Euclid . . . To make these Terms easier to read, the Site, Software, Apps and our services are collectively called the "**Services**."

Thus, the operative question is whether plaintiff's New York and common law claims constitute a "dispute, claim or controversy arising out of or relating to . . . the use of" "services and resources that are available, enabled or offered by Euclid." Again, the answer is yes.

As discussed above, Euclid's digital wallet is a pillar of plaintiff's case, and there can be no serious dispute that the wallet is a "service" "enabled or offered by Euclid." Indeed, plaintiff alleges as much in paragraph 47 of the complaint: "[Euclid] developed and operated the proprietary mobile wallet application through which $ME airdrop claims were exclusively processed." Accordingly, the waiver applies to plaintiff's class claims.

iii. Reach of Waiver

Both sides agree that, to the extent plaintiff's claims are within the scope of the waiver, it reaches plaintiff's claims against Euclid. Thus, the operative question is whether it reaches Yin. The answer is no. The waiver's language – "disputes against the other" – means the "clause is limited to the signatory parties." Doe v. Trump Corp., 6 F.4th 400, 411 n.7 (2d Cir. 2021); see MI Installers & Furniture Serv. v. N.Y.C. Dist. Council of Carpenters Pension Fund, 476 F. Supp. 2d 387, 392 (S.D.N.Y. 2007) (contract in which parties agreed to arbitrate "all disputes between them" was "limited to those signatories").

To be sure, if Euclid wanted the waiver to reach Yin (or anyone else), it wouldn't have been very difficult. See, e.g., Newman v. GREP Atl., LLC, No. 25-cv-178, 2026 WL 810318, at *2 (S.D.N.Y. Mar. 24, 2026) (class-action waiver for "claim(s) against us or our agents"); Berger v. JetBlue Airways Corp., No. 22-cv-7374, 2024 WL 4107243, at *3 (E.D.N.Y. Sept. 6, 2024) (class-action waiver for "any lawsuit brought against [defendant] or any of its affiliated entities, agents, directors, employees, and/or officers related to this Contract"). Accordingly, plaintiff's class claims against Yin survive, and with them, the Court's CAFA jurisdiction.

### C. Supplemental Jurisdiction

Plaintiff contends that even if there's no original jurisdiction over his claims against Euclid, they should not be dismissed because the Court has supplemental jurisdiction over them. The Court disagrees.

"[I]n any civil action of which the [Court has] original jurisdiction, [it has] supplemental jurisdiction over all other claims that are so related to [the original jurisdiction] claims [such] that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). But the Court "may decline to exercise supplemental jurisdiction over [such] a claim" for several reasons, including when "the claim substantially predominates over the [original jurisdiction] claims[.]" Id. § 1367(c)(2).

Here, it is not clear whether the Court could exercise supplemental jurisdiction over plaintiff's claims against Euclid.[2] But even assuming it could, the Court would decline to do so. First, letting plaintiff bring his claims against Euclid individually, in a class action against Euclid's executives, would end-run the class action waiver that divested jurisdiction over those

[2] As discussed below, the Court lacks personal jurisdiction over Yin, leaving only plaintiff's claims against the other individual defendants as potential hooks. Those defendants have not appeared (beyond waiving service), and it is conceivable that they too will successfully move to dismiss plaintiff's claims against them. Thus, there may be nothing left for plaintiff's claims against Euclid to "supplement."

claims. Second, this fight is clearly with Euclid, and plaintiff's claims against the other defendants are collateral at best. In other words, his claims against Euclid would "substantially predominate[] over the [other] claims." Id.

In sum, the Court lacks subject matter jurisdiction over plaintiff's claims against Euclid, and declines to exercise supplemental jurisdiction over them. Accordingly, the Court grants Euclid's motion to dismiss.

## II. Yin

### A. 12(b)(2) Standard

On a motion to dismiss under Rule 12(b)(2), "the plaintiff bears the burden of establishing personal jurisdiction over the defendant," MacDermid, Inc. v. Deiter, 702 F.3d 725, 727 (2d Cir. 2012), and must establish jurisdiction "separately over each defendant," In re Aegean Marine Petroleum Network, Inc. Sec. Litig., 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021). To survive, plaintiff must make a *prima facie* showing of jurisdiction based on "(1) procedurally proper service of process, (2) 'a statutory basis for personal jurisdiction that renders such service of process effective' and (3) that 'the exercise of personal jurisdiction . . . comport[s] with constitutional due process principles.'" Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd., 808 F. Supp. 3d 609, 614 (S.D.N.Y. 2025) (quoting Waldman v. Pal. Liberation Org., 835 F.3d 317, 327 (2d Cir. 2016)).

Because the due process question is dispositive, the Court need not consider the other requirements. See Waldman, 835 F.3d at 343 ("[T]he statutory requirement for service of process" "does not answer the constitutional question of whether due process is satisfied"). To that end, there are "two exercises of personal jurisdiction: general jurisdiction and specific jurisdiction." Id. at 331 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)).

**B. Analysis**

i. General Jurisdiction

General jurisdiction exists "only when the defendant's affiliations with the [forum state] 'are so constant and pervasive as to render [the defendant] essentially at home in the forum [state].'" Waldman, 835 F.3d at 331 (quoting Daimler AG v. Bauman, 571 U.S. 117, 122 (2014)). "For general jurisdiction . . . [the defendant] must be domiciled in New York, served in New York, or have otherwise consented to the court's jurisdiction." Reich v. Lopez, 38 F. Supp. 3d 436, 455 (S.D.N.Y. 2014).

Here, there is no general jurisdiction over Yin. He is not a New York resident, has not consented to jurisdiction here, and was not served here. He did waive service of process, but that only "establishes personal jurisdiction over a defendant" for "a claim that arises under federal law," see Fed. R. Civ. P. 4(k)(2), and plaintiff brings no federal claims. Thus, under Rule 4(k)(1)(A), his waiver would establish personal jurisdiction only if he were otherwise subject to the general jurisdiction of New York courts, which he is not. See Reich, 38 F. Supp. 3d at 455.

ii. Specific Jurisdiction

"Specific jurisdiction . . . depends on an affiliation between the forum and the underlying controversy," *i.e.*, an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).[3] "This 'relatively permissive' inquiry requires only that 'at least one

[3] Specific jurisdiction in federal court typically turns on the state's "long-arm" statute which "in New York is . . . CPLR § 302." Adwar Casting Co. v. Star Gems, Inc., 342 F. Supp. 3d 297, 301 (E.D.N.Y. 2018). But, as the New York Court of Appeals has recognized, satisfaction of the statute does not always satisfy federal due process. See D&R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro, 29 N.Y.3d 292, 299-300, 56 N.Y.S.3d 488 (2017) ("We have recognized that CPLR 302 and due process are 'not coextensive'; nonetheless, while 'personal jurisdiction permitted under the long-arm statute may theoretically be prohibited under due process analysis, we would expect such cases to be rare'" (quoting Rushaid v. Pictet & Cie, 28 N.Y.3d 316, 331, 45 N.Y.S.3d 276, 288 (2016))). Such was the case in Williams v. Beemiller, Inc., 33 N.Y.3d 523, 530, 106 N.Y.S.3d 237, 241 (2019). Accordingly, the Court resolves this question exclusively through due process lenses.

element [of each claim] arises from [the defendants'] New York contacts." Spetner v. Palestine Inv. Bank, 70 F.4th 632, 643 (2d Cir. 2023) (citation omitted).

The operative question is whether any element of plaintiff's claims for deceptive business practices, false advertising, negligent misrepresentation, or unjust enrichment regarding $ME arise out of or relate to Yin's New York contacts. Plaintiff's essential theory is that all of Yin's New York contacts relate to Euclid's business operations, and some of Euclid's business operations relate to $ME; therefore, all of Yin's New York contacts relate to $ME. Besides being a textbook logical fallacy, this middle-man theory flatly ignores the rule that "the *plaintiff's claims* . . . 'must arise out of or relate to the *defendant's contacts*' with the forum." Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct., 592 U.S. 351, 359 (2021) (quoting Bristol-Myers Squibb Co. v. Superior Court, 582 U.S. 255, 262 (2017)) (emphasis added).

Plaintiff predominantly describes Yin's New York contacts as "public representations about the $ME ecosystem through his X account and media appearances." In addition, plaintiff points to a 2022 "video of Yin 'passing out pizzas' under NYC's iconic scaffolding," and a 2024 yacht party in New York, attended by plaintiff, for which Yin promoted tickets on his own social media. When considered in totality, says plaintiff, "Yin's own posts, own ticket distributions, own New York appearances, and own token announcement provide jurisdiction."

Again, the Court disagrees. First, the 2022 video is clearly irrelevant because no element of any of plaintiff's claims has anything to do with Yin passing out pizzas in New York. And that makes some intuitive sense, given that $ME was not released until several years later.

Next, the yacht party is irrelevant for the same reason. Although plaintiff alleges that this event preceded the release of $ME by about eight months, that temporal proximity is the only alleged fact that even remotely connects the yacht party to $ME. Plaintiff artfully describes how

the yacht party had "a scheduled 7:30pm 'Announcement by [Euclid]' as its centerpiece," and immediately thereafter states that, eight months later, Euclid "launched the token whose promotion is the subject of this action, with Yin personally announcing it." Plaintiff apparently asks the Court to conflate the "centerpiece" announcement at the yacht party with the "launch[ of] the [$ME] token." But if that were the correct interpretation, it would have been simple enough for plaintiff to allege directly. Indeed, plaintiff does not allege that $ME was promoted, or even mentioned, at the yacht party.

That leaves Yin's promotion of $ME. Plaintiff alleges that Yin "made product announcements, cross-chain strategy updates, and public representations about the $ME ecosystems," including that he "appeared [on a] podcast to announce the $ME token." Plaintiff does not allege that any of Yin's purported representations were made in New York, but rather that they were heard by a New York audience. His essential theory is that the economic fallout in New York caused by the misrepresentations constitutes the "injury" element of each claim. See Spetner, 70 F.4th at 643 ("[A]t least one element [of each claim must] arise[] from [the defendants'] New York contacts.").

Usually, "the suffering of economic damages in New York is insufficient, alone, to establish a direct injury in New York for [personal jurisdiction] purposes." Troma Entm't, Inc. v. Centennial Pictures Inc., 729 F.3d 215, 218 (2d Cir. 2013) (quoting Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 38 (2d Cir. 2010)). But "the law of this Circuit is that plaintiff's reliance in New York on [an out of state] defendant's misrepresentation fixes the situs of the injury in New York." Palace Expl. Co. v. Petroleum Dev. Co., 41 F. Supp. 2d 427, 435 (S.D.N.Y. 1998). Indeed, "a number of cases in the Second Circuit . . . hold that the original event leading to the injury in a misrepresentation action is the plaintiff's reliance on the

misrepresentations." Miller Inv. Tr. v. Xiangchi Chen, 967 F. Supp. 2d 686, 696 (S.D.N.Y. 2013); see Pincione v. D'Alfonso, 506 F. App'x 22, 26 (2d Cir. 2012) ("[Plaintiff] satisfied the 'location' element [because] he alleged that the fraudulent January 2007 balance sheet he received in New York 'induced him to make his initial financial investment.'"). Thus, it is possible that an alleged misrepresentation by Yin, heard in New York, would satisfy the "minimum contacts" needed to confer personal jurisdiction over him.

The problem is that plaintiff does not allege *any* misrepresentation by Yin. The closest plaintiff gets is alleging that Yin had "specific knowledge that the governance and revenue-sharing mechanisms were not operational at the time they were represented." But plaintiff states (in, *inter alia*, paragraph 170 of the complaint) that these alleged misrepresentations were made by defendants Lu and ME Foundation, not Yin.

Indeed, the only relevant representation that plaintiff attributes to having actually been made by Yin concerns Euclid's $1.6 billion valuation and $157 million in fundraising for $ME. But plaintiff does not allege that those were *mis*representations. Rather, as plaintiff puts it, they were true statements that "made [defendant's false] promises credible." That ends the inquiry because, if "a statement . . . is actually true, then it cannot, by definition, be a misrepresentation or a deceptive practice." Cutrone v. Mortg. Elec. Registration Sys., Inc., No. 13-cv-3075, 2015 WL 13931932, at *9 (E.D.N.Y. June 26, 2015). Thus, plaintiff has alleged no conduct by Yin that constitutes "minimum contacts" with New York, such that the exercise of personal jurisdiction over him would satisfy due process.

## CONCLUSION

The Court grants Euclid and Yin's motions to dismiss.

**SO ORDERED.**

Brian M. Cogan
U.S.D.J.

Dated: Brooklyn, New York
September 15, 2026